David Paul BEDNAR and Jean Ellen Hall, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. A–16934.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1973.

Don Anderson, Public Defender, for appellants.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for appellee.

BUSSEY, Judge:

Appellants, David Paul Bednar and Jean Ellen Hall, hereinafter referred to as defendant Bednar and defendant Hall, were charged, tried and convicted in the District Court of Oklahoma County, for the crimes of Possession of Marihuana (CRF–70–3331), and Possession of Narcotics (CRF–70–3379). Their punishment was fixed at three (3) years imprisonment on the Narcotics charge, and four (4) years imprisonment on the Marihuana charge; defendant Hall's sentence was subsequently suspended by the trial court; and from said judgments and sentences, a timely appeal has been perfected to this Court.

At the trial, Officer Scott testified that on November 11, 1970, he and his partner, Officer Burns, were staked out about 7:30 p. m. to observe a residence at 9 N.W. 28th Street in Oklahoma City. They had a felony arrest warrant for one Roxanne Domino. At approximately 8:55 p. m., they observed a female come to the front door, open it and look out. Officer Scott testified that she "fit the general description" of Roxanne, but he did not recognize her, and conceded that the girl he saw was lighter in weight than Roxanne. They went to the rear of the house to determine the number of exits and observed the defendants through a window in the process of capping a large number of gelatine pills with a powdery substance. Officer Scott went to the front door and knocked. Defendant Bednar opened the door and Officer Scott stated that he had an arrest warrant for Roxanne Domino and asked if she was there. Defendant Bednar said that she had been there off and on, but was not there at that time. Officer Scott asked defendant Bednar if he minded if he came in and looked for himself. Defendant Bednar replied: "No, come on in and look." (TR 11) Officer Scott advised defendant Bednar that Officer Burns was at the back door and defendant Bednar unlocked the door and admitted Officer Burns.

Officer Scott noticed a pipe laying on the fireplace and in picking it up, he determined that it had an odor of burnt marihuana. He proceeded to the kitchen area and observed that Officer Burns had found a metal tool box in the cabinet which contained what appeared to be marihuana, drugs, and drug paraphernalia. The defendants were placed under arrest and searched. A syringe was found on the person of defendant Boyce (see Boyce v. State, Okl.Cr., 506 P.2d 570.)

On cross-examination, Officer Scott testified that they did not have a search warrant for the residence, only the arrest warrant for Roxanne. He admitted having used the same arrest warrant to gain entrance to a residence at 645 N.E. 14th Street the night before and a residence at 525 N.W. 27th Street on October 26th. He testified that Officer Burns broke a lock to gain entry to a box he searched.

Officer Burns' testimony did not differ substantially from the testimony of Officer Scott. Burns testified that he observed defendant .Boyce grab some items and put them in a cabinet in the kitchen after Officer Scott knocked on the front door. He admitted breaking the lock on a trunk during his search.

Don Flint testified that he was a chemist with the State Bureau of Investigation. He tested some of the substances procured by Scott and Burns during their search and determined that they were marihuana and morphine.

Defendant Hall testified that she was nineteen (19) years old and that she was

**570**

at 9 N.W. 28th Street on the evening in question. She was in the bedroom watching T.V. with Gayla (a juvenile) when the officers arrived. She denied knowledge that the marihuana and narcotics were present in the house.

Defendant Boyce testified that he rented the apartment at 9 N.W. 28th Street on October 1st. A friend of his, Rich Deacon, purportedly in trouble with the police, left the boxes there the evening before the arrests, wanting Boyce to keep them temporarily. He testified that defendants Bednar and Hall were not present when the boxes were left. There was a box with a lock on it and a locked trunk. He testified that he did not know what the contents were, but suspected they were drugs.

The first proposition asserts that the search was unlawful. Defendants state, in their brief: "This is another of those gratuitous, exploratory searches that this Court has not hesitated to condemn where done without a warrant." We are of the opinion that this proposition is well taken. Officer Scott testified that he observed a female at the door of the residence who "fit the general description" of Roxanne, although he conceded that he did not recognize the female as Roxanne (TR 14), and that Roxanne was heavier (TR 16). Scott admitted that this was the third instance of the officers gaining entrance to residences by means of this same warrant. The officers proceeded to the back of the house and looked through a window. Scott returned to the front door and on being told that Roxanne was not there, gained entrance by means of the warrant.

It is readily apparent that the officers were using the arrest warrant as a "Trojan Horse" in order to obtain entry and to search the house. See Handley v. State, Okl.Cr., 430 P.2d 830, and England v. State, Okl.Cr., 488 P.2d 1347.

The judgments and sentences are accordingly reversed and remanded, with instructions to dismiss.

BLISS, P. J., and BRETT, J., concur.