(994 P.2d 669)

No. 80,091

STATE OF KANSAS, *Appellee,* v. JOHN M. BEAL, *Appellant.*

Opinion filed January 7, 2000.

*Rick Kittel,* assistant appellate defender, *Jessica R. Kunen,* chief appellate defender, and *Matt Culp,* student intern, for appellant.

*Matt Treaster,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before JUSTICE ABBOTT, presiding, STEPHEN D. HILL, District Judge, assigned, and ROBERT J. SCHMISSEUR, District Judge, assigned.

HILL, J.: John M. Beal was convicted of one count of possession of methamphetamine with intent to sell, one drug tax stamp violation, and one count of possession of drug paraphernalia. We affirm in part, reverse in part, and vacate a portion of the sentence.

Beal had failed to appear at a sentencing hearing in a separate case. The trial court issued an arrest warrant for his nonappearance. The officers, in developing a strategy to execute the warrant, decided to take a police dog along with them in order to effect the arrest.

The officers arrived at Beal's residence, announced their presence, and entered the home. The officers searched the home but could not locate Beal. Three children who were in the home at the time of the search informed the officers that Beal was not on the premises. One of the children told the officers that Beal was "out of town," while another told officers that Beal was "over at Jimmy's."

The officers continued their search. They moved on to a detached garage located approximately 15 to 20 feet from the house. Some of the officers had previously been in the garage when executing a search warrant in 1995. Because of their experience with Beal, the officers knew that Beal had used the garage as an office. The garage has no windows. It is equipped with a roll-up door and a heavy metal, reinforced walk-through door, equipped with a swivel-type peephole. Using a battering ram to punch out the doorknob of the locked garage, the officers forced their way inside.

The interior of the garage was dimly lit and the officers approached with caution, their guns drawn for safety. One of the officers spotted a bent spoon attached to a piece of plastic and a pipe. He believed this to be drug paraphernalia. The officers decided to use the police dog to search for Beal. The police dog was trained to track individuals as well as to alert officers to controlled substances. The dog failed to locate Beal but did go straight to a cabinet located in the garage. The officers concluded that the dog

was indicating there were illegal drugs in the cabinet. The officers left the garage and decided to obtain a search warrant.

While the officers were waiting for the search warrant, Randy Van Pelt arrived at the residence. Believing Van Pelt to be the defendant, one of the officers removed him from his car and conducted a pat-down search of his person. Van Pelt was in possession of a small quantity of methamphetamine and was arrested. Van Pelt told officers that he had gone to Beal's residence to purchase narcotics from him. Van Pelt told the officers that he had made five or six drug purchases from Beal in the past, and each time Beal had retrieved the drugs from the garage. Van Pelt also told the officers that he had purchased methamphetamine from Beal as recently as 1 week before.

Upon receiving the search warrant, the officers searched the rest of the garage. They found plastic baggies, a scale, a bent spoon, a glass tube, a record book containing names and amounts of money, a funnel, a spatula, and three packets containing a white powdery substance which they believed to be methamphetamine.

At trial, Van Pelt testified that he had purchased methamphetamine from Beal in the past. Beal did not object to the testimony of Van Pelt.

Beal also testified at the trial. He stated that it had been a year since he had any dealings with Van Pelt. Beal also testified that he had never sold anything illegal to Van Pelt. Beal further testified that the scales, baggies, record book, drugs, and other drug paraphernalia belonged to someone else.

Beal raises five issues on appeal: (1) The trial court erred when it denied his motion to suppress evidence obtained from his garage; (2) the trial court improperly admitted evidence of prior drug sales activities; (3) the trial court was required to give a limiting instruction once it decided to admit evidence concerning his prior drug sale activities; (4) there was insufficient evidence to sustain his conviction for a drug tax stamp violation and possession of methamphetamine with intent to sell; and (5) the trial court erred when it commented on the chain of custody while admitting some State's exhibits at the trial. We will deal with those issues in order.

Beal argues that the arrest warrant obtained by the officers gave them the right to search his residence or dwelling but did not give the officers the right to search the detached garage located 15 to 20 feet away from his house. He argues that the evidence found in the garage should have been suppressed by the trial court. We disagree.

In reviewing a decision regarding the suppression of evidence, we review the facts of the decision by a substantial and competent evidence standard of review and review the ultimate legal decision drawn from those facts de novo with independent judgment. *State v. Baacke*, 261 Kan. 422, 437, 932 P.2d 396 (1997). The State bears the burden of proving that the evidence was lawfully obtained. See *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

Our United States Supreme Court in *Payton v. New York*, 445 U.S. 573, 603, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), stated: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, therefore, "requires a two-part inquiry: first, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have 'reason to believe' that the suspect is within the dwelling." *United States v. Magluta*, 44 F.3d 1530, 1533 (11th Cir. 1995). The officers' reasonable belief is evaluated under a totality of the circumstances test. 44 F.3d at 1535.

In *State v. Krout*, 100 N.M. 661, 663, 674 P.2d 1121 (1984), the New Mexico Supreme Court held that an arrest warrant gave officers the authority to search for the arrestee in a greenhouse located about 300 yards away from the arrestee's residence on the same lot, as long as the officers had a reasonable belief that they might find the arrestee there.

In *United States v. Pallais*, 921 F.2d 684 (7th Cir. 1990), the defendant was living in an apartment above a garage on property owned by his children. The officers had an arrest warrant but not a search warrant, and in an effort to find the defendant the officers entered into another house located on the same lot. The defendant argued that the officers had no authority to search the other house

as it was not his residence. The *Pallais* court held that the officers had authority to search the house because it was "part of a complex of buildings constituting [the defendant's] residence." 921 F.2d at 691. The *Pallais* court further stated: "Under *Payton*, police armed with an arrest warrant can search the entire residence of the person named in their warrant in order to execute it—[the defendant] cannot defeat the search by hiding in the garage." 921 F.2d at 691.

Under Kansas law, K.S.A. 22-2405(3), officers may use all necessary and reasonable force to effect an entry upon any building or property or part thereof to make an authorized arrest. The officers in this case had the authority to search the detached garage in an effort to effect their arrest warrant and upon the reasonable belief that the defendant was in the garage.

An arrest warrant gives officers the right to search for a person. Officers may search the property of the arrestee if they have reasonable belief that the arrestee is present on the property. The search for the arrestee is not limited to a house or dwelling. Officers have authority to search nonresidential buildings located on the property if they have a reasonable belief that the arrestee may be located in one of the nonresidential buildings. Officers cannot use the arrest warrant as a "Trojan horse" to search areas where the arrestee could not be hiding. See *Bednar v. State*, 506 P.2d 568, 570 (Okla. App. 1973). The *Bednar* court held that the officers could not use an arrest warrant to search a small locked trunk located inside the arrestee's house when they could not locate the arrestee inside the house. 506 P.2d at 570.

In this case, some of the officers knew Beal had used the detached garage as an office. Beal was a fugitive and had a history of eluding officers. Some of the officers had previously searched the garage pursuant to the execution of a search warrant. In fact, when Van Pelt arrived at the property looking for Beal, the first place that he looked was the garage. While the officers discovered that the garage was locked and they could not look inside the garage since it had no windows and only a small peephole, the officers used reasonable force to gain entry into the garage. Once inside, the officers found drug paraphernalia in plain view. The other ev-

idence was obtained by the officers after they had secured a search warrant for the premises.

We hold that the officers had the authority to search the garage in an effort to execute the arrest warrant because they had a reasonable belief that Beal was inside the garage. We conclude the trial court properly admitted the evidence.

Beal next argues that the State should not have been allowed to present evidence of his prior crimes without having a hearing prior to the trial court to determine its admissibility. Because Beal failed to object at the trial court level, we have no jurisdiction to review this issue.

The standard of review regarding a trial court's admission of evidence subject to exclusionary rules is abuse of discretion. Discretion is abused only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view. *State v. Haddock*, 257 Kan. 964, 978, 897 P.2d 152 (1995).

At trial, the State called Van Pelt as a witness who testified that he had purchased drugs from Beal about a week before the execution of the arrest warrant. Beal failed to object at the time but now contends that it was erroneous to admit the evidence of his prior crimes. We cannot review evidentiary issues which were not objected to at trial. See *State v. Cheeks*, 258 Kan. 581, 594, 908 P.2d 175 (1995).

Continuing his argument concerning the testimony of Van Pelt, Beal argues that the trial court should have given the jury a limiting instruction concerning the use of prior crimes evidence, even though no contemporaneous objection was made. We disagree.

When a party did not request at trial that a limiting instruction be given but complains on appeal of the failure to give the instruction, the standard of review is a "clearly erroneous" standard. See *State v. Roberts*, 261 Kan. 320, 326, 931 P.2d 683 (1997).

The State argues that the prior crimes evidence was not admitted pursuant to K.S.A. 60-455 but was used as res gestae and therefore no limiting instruction was required. Generally, res gestae evidence is that evidence which does not constitute a portion of the crimes charged but has a natural, necessary, or logical connection to the

crime. *State v. Peck*, 237 Kan. 756, Syl. ¶ 2, 703 P.2d 781 (1985). The State argues that this evidence is res gestae because it helps to explain the relationship between Van Pelt and Beal and helps to explain the presence of baggies, a scale, a bent spoon, a glass tube, a drug ledger, and three packets of methamphetamine in Beal's garage. While the evidence of the drugs and the drug paraphernalia needs no additional explanation, the evidence of Beal's prior dealings with Van Pelt does help explain why Van Pelt arrived at the scene and went first to the garage when he came to the property looking for Beal.

Failure to request a limiting instruction or failure to object to the lack of a limiting instruction waives the right to argue the issue on appeal. The defendant has the burden to request the limiting instruction on evidence which is used as res gestae. See *State v. Redford*, 242 Kan. 658, 666, 750 P.2d 1013 (1988).

We conclude that the trial court was not required to offer a limiting instruction on the evidence of prior crimes, as the evidence was res gestae and does not require a limiting instruction.

Beal next argues that there was insufficient evidence to convict him for the charge of the drug tax stamp violation and for the charge of possession with intent to sell. We agree with his first contention but disagree with his second.

When a sufficiency of the evidence is challenged, the standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Cellier*, 263 Kan. 54, Syl. ¶ 7, 948 P.2d 616 (1997).

In order for Beal to be convicted of a drug tax stamp violation, he needs to fall under the definition of a "dealer" pursuant to K.S.A. 79-5201(c). In order to be considered a dealer, Beal must have been in possession of "more than one gram of any controlled substance." See K.S.A. 79-5201(c).

The State secured two pieces of evidence labeled Exhibits 10 and 11. Exhibit 10 weighed 0.4 grams and tested positive for methamphetamine. Exhibit 11 was actually two packages, neither of which was weighed separately but when weighed together weighed

1.4 grams. Samples from each package contained in Exhibit 11 were combined, and the combined sample tested positive for the presence of methamphetamine.

The methodology employed in the testing of the purported controlled substances in this case is suspect. The individual packets that comprised Exhibit 11 were never weighed separately. We do know that their combined weight was 1.4 grams. While samples were taken from both packets in Exhibit 11, they were not tested separately but combined into one sample, which tested positive for methamphetamine. One of the packets could have contained methamphetamine and one could have contained a substance that was not controlled. Both packets could have contained methamphetamine, but no test was performed that would prove this. Even if one of the packets in Exhibit 11 contained methamphetamine, we do not know its separate weight in order to determine whether when combined with Exhibit 10 (0.4 grams), there was more than 1 gram of methamphetamine that would require the purchase of a drug tax stamp. Laboratory tests of this kind must show that there is a controlled substance as well as its quantity.

Nor is the chemist's opinion that the substances in the two packets of Exhibit 11 "appeared similar" sufficient to sustain a finding of guilt. No foundation testimony was presented at trial that would lead us to believe that such an opinion was generally accepted as reliable in the scientific community. See *State v. Fuller*, 15 Kan. App. 2d 34, 39, 802 P.2d 599 (1990), *rev. denied* 248 Kan. 997 (1991).

In a criminal case, the burden of proof is placed upon the State. Speculation based on probability or statistical or mathematical calculations is insufficient to prove guilt beyond reasonable doubt. *State v. Hobbs*, 248 Kan 342, 350, 807 P.2d 120 (1991).

We find that there is insufficient evidence that would convince us that a rational factfinder could have found the defendant guilty of the drug tax stamp violation, because the State failed to prove that Beal was in possession of more than 1 gram of methamphetamine.

Beal argues that there was insufficient evidence to support his conviction for possession of methamphetamine with intent to sell.

His argument is based entirely on his argument that the contents of the garage should have been suppressed at trial. If the evidence would have been suppressed, Beal argues there would have been insufficient evidence to convict. Since we have held that the search was legal, this argument fails.

Finally, Beal argues that the trial court impermissibly commented on the chain of custody of State's Exhibits 10 and 11 and therefore deprived him of a fair trial. We disagree.

During trial, Beal objected to the admission of State's Exhibits 10 and 11 based upon a faulty chain of custody. When ruling upon the objection, the court stated:

"THE COURT: It is up to the court obviously to admit the evidence into evidence or whatever is presented into evidence. And the evidence that was presented by the witnesses today was that State's Exhibit 10 and 11 was collected at the garage, that it was placed in bags at the garage, it was then transported to the sheriff's office in a tube, gray and red in color. It was locked in the car of Officer Higgins. It was retrieved from there and then placed in the custody, evidence locker, in the basement of the sheriff's office. From there it was then transferred to the KBI. It was retrieved by Chief Stanyan, turned over to Hernandez and examined at the KBI. It was returned and placed back in the locker. The officers testified that only Higgins and Hernandez had access to the custody locker at the sheriff's office, that it was in the basement, that it was secured, and the court's ruling is that the chain of custody has substantially been established as is required by the statute. And it will be admitted into evidence."

Beal argues that these comments, made in the presence of the jury, are an expression of the court's personal views about the chain of custody of the evidence.

Allegations of judicial misconduct during the trial must be decided on the particular facts and circumstances surrounding such alleged misconduct. In order to warrant the granting of a new trial, it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. See *State v. Hays*, 256 Kan. 48, Syl. ¶ 2, 883 P.2d 1093 (1994).

We find that Beal's argument is without merit. The duty of the trial court is to determine the admissibility of the evidence. Here the trial court was merely recounting the testimony that had been heard concerning the evidence. This testimony had all previously been heard by the jury.

Furthermore, Beal failed to object to the trial court's statement or request that its statements be stricken from the record or that the jury be admonished to disregard the trial court's statements concerning State's Exhibits 10 and 11. Failure to make a contemporaneous objection prevents an appellate court from considering an issue on appeal. See *State v. Holbrook*, 261 Kan. 635, Syl. ¶ 4, 932 P.2d 958 (1997).

We affirm the conviction of one count of possession of methamphetamine with intent to sell and one count of possession of drug paraphernalia. We reverse the conviction of the drug tax stamp violation and vacate 7 months of Beal's imprisonment sentence which the sentencing court had made consecutive to Beal's sentence for possession of methamphetamine with intent to sell.

Affirmed in part, reversed in part, and sentence vacated in part.