(99 P.3d 145)
No. 91,413

STATE OF KANSAS, *Appellee,* v. KONDWANI L. JENNINGS, *Appellant.*

Opinion filed November 5, 2004.

*Rick Kittel*, assistant appellate defender, for appellant.

*Deborah Hughes*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before GREEN, P.J., MCANANY, J., and BUKATY, S.J.

GREEN, J.: Kondwani Jennings appeals his convictions of possession of cocaine with intent to sell in violation of K.S.A. 65-4161(a), failure to pay the Kansas drug tax in violation of K.S.A. 79-5201 *et seq.*, and possession of drug paraphernalia in violation of K.S.A. 65-4152. On appeal, Jennings first argues that the trial court erred by denying his motion to suppress the evidence that was seized from him after he consented to a search of his person. We find that Jennings' consent to search was voluntary because he had not been seized at the time he was asked for his consent. Therefore, the trial court properly denied Jennings' motion.

In addition, Jennings contends that his conviction for the tax stamp violation should be reversed because the State failed to prove that he possessed more than 1 gram of cocaine. We disagree and find that the evidence set forth by the State sufficiently showed that Jennings possessed more than 1 gram of cocaine to which he failed to affix a drug tax stamp. Accordingly, we affirm the trial court's decision.

On December 20, 2001, three police officers, including Officers Doug Garman and Bruce Voight, executed a search warrant at a residence located at 1310 Southwest Lane in Topeka. The warrant gave the officers authority to search for drugs and for a resident named Curtis Jones, also known as Curtis Mayfield. The officers arrived at the residence around 6 p.m. but spent some time outside detaining individuals. During the search of the residence, the officers found four handguns and marijuana.

At approximately 7:25 p.m., while the officers were still searching the house, they heard a knock at the back door. The officers went to the back door, opened it, and saw three men standing there who were wearing large winter coats. The officers told the three men that they were police officers. The officers then stepped onto the back porch. Officer Voight told the men to take their hands out of their pockets.

The officers each spoke with one of the men. Garman spoke with Jennings and advised him that the officers were searching the residence. Garman asked Jennings if he had any weapons or anything illegal on him. Jennings responded that he did not. Garman then asked Jennings for permission to search him, and Jennings consented. Garman testified that if Jennings had not given his consent to search, Garman would have allowed him to walk away from the residence. After Jennings consented to the search, Garman asked him to turn around away from Garman and keep his hands where they could be seen.

While Garman was speaking with Jennings, Officer Voight was talking to one of the other men whose last name was Dudley. Voight indicated that he would not have allowed Dudley to walk away without doing a patdown of him. Voight stated that the men were wearing heavy coats, the officers had found four guns inside the residence, and he was not going to give Dudley the opportunity to walk away and then pull out a gun. Nevertheless, Voight testified that if he had asked consent to search Dudley's pockets and Dudley had refused, he would not have searched him.

During the search of Jennings, Garman discovered a plastic bag that contained several individually wrapped rocks that appeared to be cocaine. No drug tax stamp was affixed to the substance taken from Jennings. The plastic bag actually contained 10 individually wrapped rocks which weighed a total of 3.28 grams. Later testing of one of the rocks was positive for cocaine.

After Garman discovered the plastic bag on Jennings, Jennings was then interviewed by Voight in the southeast bedroom of the residence. Voight read Jennings his *Miranda* warnings. When Voight asked Jennings if he used cocaine, Jennings responded that he did not. Nevertheless, when Voight asked Jennings if he in-

tended to sell the cocaine in his possession, Jennings responded in the affirmative. Jennings told Voight that the cocaine in his possession was "fronted" to him, that is, given to him to sell in order for Jennings to make a profit.

In October 2002, Jennings was charged with possession of cocaine with intent to sell in violation of K.S.A. 65-4161(a), with drug dealer's failure to pay the Kansas drug tax in violation of K.S.A. 79-5201 *et seq.*, and with possession of drug paraphernalia in violation of K.S.A. 65-4152. In June 2003, Jennings moved to suppress the items seized from him, as well as his subsequent statements. Jennings argued that his consent to search was tainted because he had been unlawfully seized when the officer told him to remove his hands from his pockets. On the other hand, the State maintained that Jennings had not been detained and had voluntarily consented to the search. After hearing testimony from Garman and Voight at the suppression hearing, the trial court found that Jennings' consent to search was voluntary and denied the motion.

On the same day of the suppression hearing, the trial court conducted a short bench trial where, by agreement of the parties, it incorporated the testimony from the suppression hearing and heard additional testimony from Voight. The trial court found Jennings guilty of the charged offenses and sentenced him accordingly. The trial court suspended Jennings' sentence and imposed an 18-month period of probation supervised through Community Corrections.

*Suppression of Evidence*

First, Jennings argues that the trial court erred in denying the motion to suppress. When reviewing a motion to suppress evidence, the appellate court determines whether the factual underpinnings of the trial court's decision are supported by a substantial competent evidence standard. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. The appellate court does not reweigh the evidence. *State v. Vandervort*, 276 Kan. 164, 169, 72 P.3d 925 (2003).

Throughout his argument on this issue, Jennings maintains that he was seized by the officers. Jennings contends that the State failed to sustain its burden of showing that the officers were justified in detaining him at the scene so that they could ask consent to search his person. On the other hand, the State asserts that substantial competent evidence supports the conclusion that this was a voluntary encounter between Officer Garman and Jennings during which Jennings voluntarily consented to a search of his person.

The Fourth Amendment to the United States Constitution protects an individual against "unreasonable searches and seizures." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003). "The Fourth Amendment 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.' [Citation omitted.] This requires an officer to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. [Citations omitted.]" *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985).

Nevertheless, a voluntary encounter between a police officer and a citizen does not constitute a seizure and does not implicate the Fourth Amendment. *State v. Crowder*, 20 Kan. App. 2d 117, Syl. ¶ 2, 887 P.2d 698 (1994). Noting that an officer's request for consent to search can constitute part of a voluntary encounter, the United States Supreme Court in *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991), stated:

"[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, [citations omitted]; ask to examine the individual's identification, [citations omitted]; and request consent to search his or her luggage, [citation omitted]—as long as the police do not convey a message that compliance with their requests is required."

Moreover, " '[s]o long as a reasonable person would feel free "to disregard the police and go about his business," [citation omitted], the encounter is consensual and no reasonable suspicion is required.' " *State v. Reason*, 263 Kan. 405, 410-11, 951 P.2d 538 (1997) (quoting *Florida v. Bostick*, 501 U.S. at 434).

An officer has seized a person when there is an application of physical force or a show of authority which, under the totality of

circumstances, would cause a reasonable person to feel that he or she is not free to leave. *Morris*, 276 Kan. at 18-19 (applying *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 [1991]).

To support his position that he was seized by the police officers, Jennings cites *State v. Wilson*, 30 Kan. App. 2d 100, 39 P.3d 668, *rev. denied* 273 Kan. 1040 (2002). There, the police executed a search warrant at a home where Wilson was visiting a friend. The warrant did not authorize a search of all individuals present at the residence. Upon arriving at the residence, the officers ordered the occupants to get down on the floor. Wilson complied with the order and was handcuffed. Wilson was not given any *Miranda* warnings. After the house was secured, an officer asked Wilson if he had any drugs on him, and Wilson replied that he did not. The officer testified that Wilson eventually consented to a search of his person whereupon crack cocaine was found in his pocket.

Before trial, Wilson moved to suppress the crack cocaine, arguing that he had been illegally detained and that his consent to search was not voluntary. The trial court denied the motion, finding that Wilson's consent was voluntary. On appeal, this court reversed the trial court's decision on the motion. Finding that Wilson had been illegally seized, this court noted that the officer had testified that Wilson did not pose a reasonable threat, that he did not observe drugs or contraband near Wilson, and that he did not reasonably suspect Wilson was involved in criminal activity. Therefore, the officer had not been justified in continuing to detain Wilson after the house was secure. 30 Kan. App. 2d at 106. This court further found that "even if Wilson consented to the search, no sufficient intervening events, including Wilson's consent or the officer's notification, purged the taint of the illegal detention." 30 Kan. App. 2d at 108.

The instant case is clearly distinguishable from *Wilson*. Here, Jennings was not inside the house when the search warrant was executed. Instead, he voluntarily approached the residence while, unknown to him, the police were inside executing a search warrant.

When the police discovered his presence, he was not ordered to get on the ground and then handcuffed as was the defendant in *Wilson*. Instead, the officers identified themselves, stepped onto the porch, and one-on-one asked the men some questions. Although Officer Voight told the men to remove their hands from their pockets, he did not command the men to remain in place. His statement was simply made for officer safety reasons and would not communicate to a reasonable person that he or she was not free to leave.

In *United States v. Barnes*, 496 A.2d 1040 (D.C. App. 1985), an officer approached the defendant, whom he had observed loitering outside a store in a high-crime area. The officer asked the defendant to remove his hands from his pockets and then proceeded to ask him two questions. Noticing a bulge in the individual's stomach area, the officer subsequently recovered a revolver from the defendant's pocket. The District of Columbia Court of Appeals stated that the officer's request for the defendant to remove his hands from his pockets, followed by the two questions and the defendant's voluntary answers, met the Supreme Court test for a preseizure, consensual encounter. 496 A.2d 1041-45; see also *People v. Hardrick*, 60 P.3d 264, 269 (Colo. 2002) ("[A]ny time an officer is engaged in a valid search or arrest and a third party inserts himself into the situation, the officer may ask the interloper to show his hands."); *State v. Nettles*, 70 Wash. App. 706, 710-12, 855 P.2d 699 (1993) (officer's request for suspect to remove hands from pockets during course of consensual encounter did not turn encounter into seizure).

We agree with the above cases and find that the request for the men to remove their hands from their pockets did not turn this voluntary encounter into a seizure. We further find that the officers' behavior up to and including the time that Officer Garman asked Jennings' consent to search his person would not communicate to a reasonable person that he or she was not free to leave the premises. Thus, there had been no seizure of Jennings at the time Garman asked his consent to search. As a result, we agree

with the trial court that Jennings' consent to search was voluntary and find that the motion to suppress was properly denied.

*Drug Tax Stamp Violation*

Finally, Jennings contends that his conviction for a drug tax stamp violation should be reversed because the State failed to prove that he possessed more than one gram of cocaine.

"When a defendant challenges the sufficiency of evidence, this court's standard of review is whether, after review of all of the evidence viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

Here, the officers seized from Jennings a plastic bag containing 10 individually wrapped rocks that appeared to be cocaine. The total weight of the rocks was 3.28 grams. Lab testing was done on one of the rocks, which revealed that it was cocaine. After Jennings was arrested and given *Miranda* warnings, he told Officer Voight that the cocaine in his possession was given to him to sell. Voight testified that there was no drug tax stamp affixed to the unlawful substance.

The journal entry of sentencing in this case indicates that Jennings was convicted of failure to pay the Kansas drug tax by a drug dealer in violation of K.S.A. 79-5201 *et seq.*

K.S.A. 79-5208 states:

"Any dealer violating this act is subject to a penalty of 100% of the tax in addition to the tax imposed by K.S.A. 79-5202 and amendments thereto. In addition to the tax penalty imposed, a dealer distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony."

Under K.S.A. 79-5201(c), a dealer is defined as follows:

"[A]ny person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana, or more than one gram of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight."

Essentially, Jennings contends that because only 1 out of the 10 seized cocaine rocks was tested and because the evidence failed to

show that this particular rock weighed in excess of 1 gram, there was insufficient evidence produced at trial to convict him of a drug tax stamp violation.

To support his position, Jennings cites *State v. Beal*, 26 Kan. App. 2d 837, 994 P.2d 669 (2000). There, the State had presented two pieces of evidence labeled Exhibits 10 and 11. Exhibit 10 weighed 0.4 grams, and test results indicated that it contained methamphetamine. Exhibit 11 consisted of two packages that together weighed 1.4 grams. The packets were not separately weighed. Samples were taken from each package, combined, and then tested. The combined sample tested positive for methamphetamine. On appeal, this court determined that the method of testing Exhibit 11 was suspect:

> "The methodology employed in the testing of the purported controlled substances in this case is suspect. The individual packets that comprised Exhibit 11 were never weighed separately. We do know that their combined weight was 1.4 grams. While samples were taken from both packets in Exhibit 11, they were not tested separately but combined into one sample, which tested positive for methamphetamine. One of the packets could have contained methamphetamine and one could have contained a substance that was not controlled. Both packets could have contained methamphetamine, but no test was performed that would prove this. Even if one of the packets in Exhibit 11 contained methamphetamine, we do not know its separate weight in order to determine whether when combined with Exhibit 10 (0.4 grams), there was more than 1 gram of methamphetamine that would require the purchase of a drug tax stamp. Laboratory tests of this kind must show that there is a controlled substance as well as its quantity." 26 Kan. App. 2d at 844.

This court concluded that there was insufficient evidence to convict Beal of the drug tax stamp violation. 26 Kan. App. 2d at 843-44.

*Beal* is distinguishable from the present case. Here, when Jennings was questioned by Officer Voight after he had been read the *Miranda* warnings, he admitted that he was going to sell the cocaine in his possession. In addition, a sample of one of the rocks tested positive for cocaine. Although only one of the individually wrapped rocks within the package was tested, the rocks were all contained within the same bag. Based on Jennings' admission and the drug testing performed on the rock, there was a clear inference that the rocks all contained cocaine.

We find that the evidence was sufficient to prove beyond a reasonable doubt the drug tax stamp violation with which Jennings was charged. It is important to point out that it would be prohibitively expensive to require the State to conduct drug testing on every one of the 10 rocks found in the same bag. As noted by this court in *State v. Johnson*, 31 Kan. App. 2d 687, 692, 71 P.3d 481 (2003): "[T]he State is not required to prove an element of a crime to an infallible degree of mathematical certainty. Instead, the State must prove every element of the crime beyond a reasonable doubt. [Citation omitted.]" We hold that such a showing of proof was made in this case.

Affirmed.