No. 95,348

STATE OF KANSAS, *Appellant*, v. DANIEL LEE, *Appellee*.

(156 P.3d 1284)

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 26, 2006.

Opinion filed April 27, 2007.

*Ellen H. Mitchell*, county attorney, argued the cause, and *Bobby J. Hiebert, Jr.*, assistant county attorney, and *Phill Kline*, attorney general, were with her on the brief for appellant.

*JoAn M. Lindfors*, assistant public defender, argued the cause, and *Pamela S. Sullivan*, public defender, was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: This matter comes before us on Daniel Lee's petition for review. The district court granted Lee's motion to suppress evidence, and the State appealed. The Court of Appeals reversed the district court's decision, concluding that the evidence was not seized in violation of Lee's Fourth Amendment rights.

## FACTS

The events leading to Lee's arrest began at approximately 10:30 p.m. on July 30, 2005. Two Salina police officers were dispatched to a public park in response to a report that a suspicious man was walking through the park, looking at the ground, and hitting the ground with a stick. The report indicated only that the man's behavior was odd but did not indicate that the man was threatening anyone with the stick or committing a crime.

As the uniformed officers approached the man, who was later identified as Daniel Lee, they observed him looking at the ground and poking it with a stick. One of the officers asked Lee if they could speak with him. Lee continued to look at the ground as if searching for something but agreed to speak with the officers. The officer then asked Lee for identification, and Lee handed the officer his drivers license. The officer then asked Lee why he was in the park. Lee responded that he was looking for a wallet that he had lost the previous week. Although skeptical that the wallet would still be in the park, the officer searched the ground in the immediate area with his flashlight to help Lee look for the wallet.

Lee remained focused on his search for the missing wallet as the officers questioned him. Although Lee's behavior was not threatening, one of the officers asked Lee if he had any weapons. Lee responded affirmatively and removed two legal knives from his

pocket, placing them on a nearby picnic table. While Lee contin-
ued to search the ground for the wallet, one of the officers asked
for permission to conduct a pat-down search for weapons. The
officer did not ask Lee to empty his pockets. Without hesitating,
Lee consented to the pat-down search for weapons.

During the pat-down, the officer discovered a bulge in Lee's
coin pocket. The officer reached into Lee's coin pocket and re-
moved a rolled-up baggie containing a crystalline powder, which
resembled methamphetamine. The officer then arrested Lee and
placed him in handcuffs. The officers also took custody of Lee's
duffel bag and searched it. Inside a pocket of the duffel bag, the
officers found what they suspected to be marijuana residue.

The State charged Lee with possession of methamphetamine,
possession of marijuana, and possession of drug paraphernalia. Lee
filed a motion to suppress the evidence. The district court con-
ducted an evidentiary hearing, receiving testimony from one of the
officers. Lee did not testify. The district court concluded that the
officers violated the limitations of a *Terry* stop and coerced Lee's
consent to the search. Based on these conclusions, the district court
granted Lee's motion to suppress, stating:

"This is still America, and I don't think the fact that somebody is allegedly
acting strange or, quote, looked out of place in a park, waives that person's rights
as a citizen. The officers ascertained his identity and his business and that was all
they had a right or responsibility to do at this point. The case law is clear that a
generalized suspicion, or feeling of officer insecurity, is certainly not sufficient to
trigger a request for a search."

The State appealed the district court's decision to the Court of
Appeals. A majority of the Court of Appeals panel concluded that
the encounter between Lee and the officers was consensual and
Lee voluntarily consented to the search. *State v. Lee*, No. 95,348,
unpublished opinion filed May 26, 2006. The majority reversed the
district court's order suppressing the evidence and remanded the
matter for further proceedings. A dissenting judge agreed with the
district court's analysis, concluding that the evidence should have
been suppressed. We granted Lee's petition for review.

## ANALYSIS

The only issue before us is whether the evidence should be sup-

pressed. We review a motion to suppress evidence using a bifurcated standard. First, we review the factual underpinnings using a substantial competent evidence standard. Next, we consider the ultimate legal conclusion drawn from the facts as a question of law subject to unlimited review. *State v. Parker*, 282 Kan. 584, 588, 147 P.3d 115 (2006). When the facts are undisputed, the question of whether the evidence should have been suppressed is a question of law subject to de novo review. *State v. Hill*, 281 Kan. 136, 140, 130 P.3d 1 (2006).

Lee claims that the district court properly suppressed the evidence against him because it was seized in violation of his Fourth Amendment right against unreasonable searches and seizures. Lee raises two arguments. First, Lee argues that the district court properly concluded that the officers did not have reasonable suspicion to detain him. Second, Lee asserts that the officers exceeded the scope of his consent to a pat-down search for weapons.

Without disputing Lee's version of the facts, the State argues that the initial encounter between Lee and the officers was consensual. The State asserts that although the encounter became an investigatory detention when the officers asked to search Lee for weapons, Lee voluntarily consented to the search.

Our analysis begins with the initial encounter between Lee and the officers. The district court concluded that the initial encounter was a *Terry* stop or an investigatory detention. The majority of the Court of Appeals, on the other hand, concluded that the initial encounter was consensual. Slip op. at 9.

To resolve the conflict in the lower courts' analyses, we must start our analysis with the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, which guarantee that each person shall be free from unreasonable searches and seizures. Based on the development of the law regarding these guarantees, we have classified encounters between police and citizens into four categories: voluntary encounters, investigatory detentions, public safety stops, and arrests. A voluntary or consensual encounter is the only type of encounter that does not implicate the protection of the Fourth Amendment. *Parker*, 282 Kan. at 588. For an investigatory detention, law enforcement

officers must have reasonable suspicion to believe that an individual is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1). For a public safety stop, a law enforcement officer must be able to articulate specific facts that indicate a concern for public safety before approaching an individual to check on his or her welfare. 282 Kan. at 588. For an arrest, a law enforcement officer must have a warrant for the individual's arrest, probable cause to believe there is a warrant for the individual's arrest, or probable cause to believe that the individual is committing or has committed a crime. K.S.A. 2006 Supp. 22-2401.

To distinguish consensual encounters from investigatory detentions, we must determine whether a reasonable person would feel free to go about his or her business and disregard the law enforcement officer. *Parker*, 282 Kan. at 589. There are several objective factors that may be considered to determine whether there was a coercive show of authority such that the person would not feel free to disregard the officer. Those factors include the "presence of more than one officer, the display of a weapon, physical contact by the officer, or use of a commanding tone of voice." *State v. Hayes*, 35 Kan. App. 2d 616, 624-25, 133 P.3d 146 (2006) (holding that a valid traffic stop did not become a consensual encounter when the officer handed the driver a warning ticket because the officer advised the defendant that he was finished "as far as that [was] concerned" and the defendant was standing in front of two officers and two patrol cars with their emergency lights flashing); see also *City of Topeka v. Grabauskas*, 33 Kan. App. 2d 210, 219-20, 99 P.3d 1125 (2004) (holding that a reasonable person would not feel free to leave when an officer grabbed her and attempted to place her in handcuffs); *cf. State v. Jennings*, 33 Kan. App. 2d 244, 249-50, 99 P.3d 145 (2004), *rev. denied* 279 Kan. 1009 (2005) (holding that commanding individuals to remove their hands from their pockets so officers could see them did not convert a consensual encounter into an investigatory detention).

In *State v. Reason*, 263 Kan. 405, 412, 951 P.2d 538 (1997), this court concluded that the initial encounter was consensual when two officers approached the defendant in a public place and asked for identification. Reason and a companion were sleeping in Rea-

son's BMW automobile with the doors wide open in a public parking lot on a hot afternoon. Unable to see the occupants and concerned that the BMW had been stolen or abandoned, the two officers parked their patrol car behind the BMW to investigate. When the officers observed the defendant and his companion asleep in the car, they woke them and began asking questions to determine who they were and why they were sleeping in a public parking lot. Reason verbally identified himself and stated that he was the owner of the car but could not provide a driver's license or any registration documents for the car. The officer then checked for outstanding warrants on Reason and ran the registration for the BMW based on the vehicle identification number. The *Reason* court held that the initial encounter was consensual, stating that the "situation would naturally draw the police officers' attention." 263 Kan. at 412. However the *Reason* court further concluded that the encounter became an investigatory detention when the officer checked for outstanding warrants on Reason. 263 Kan. at 412.

The undisputed facts in this case are analogous to the facts of the initial encounter in *Reason*. Like the officers in *Reason*, who responded to an odd situation in a public place, the two officers in this case responded to a public park at 10:30 p.m. based on a report that an individual was behaving oddly. The individual was walking around the park, looking at the ground, and hitting the ground with a stick. The officers approached Lee and asked to speak with him. Lee agreed to speak with the officers, who then asked for Lee's identification. After Lee gave the officers his name, one of the officers asked Lee what he was doing in the park. Lee responded that he was looking for a wallet that he had lost the previous week. Throughout the conversation, Lee continued looking at the ground for his lost wallet, giving minimal attention to the officers. Although Lee was preoccupied during the conversation, he was cooperative and did not attempt to leave the officers.

We believe that a reasonable person in Lee's situation would have felt free to disregard the officers and go about his or her business. Even though there were two officers, there is no evidence that the officers displayed their weapons, physically restrained Lee, or spoke with a commanding tone of voice. Lee demonstrated his

subjective belief that he was free to disregard the officers and go about his business when he refused to stop what he was doing and continued to look for his wallet while the officers were talking to him. These facts support the legal conclusion that Lee's encounter with the officers was consensual. We agree with the majority opinion from the Court of Appeals, which properly concluded that the encounter between Lee and the officers was consensual.

The next step in our analysis is to determine whether the majority of the Court of Appeals properly concluded that Lee consented to the search. The State's argument on appeal assumes that the encounter became an investigatory detention when the officers asked to conduct a pat-down search of Lee for weapons. However, we do not believe the law requires the State's assumption. In *Parker*, we concluded that the defendant's initial encounter with a law enforcement officer was consensual. The encounter occurred when a patrol officer driving a marked patrol vehicle approached a garage at an apartment complex to investigate a report of "some guys hanging out in a garage." 282 Kan. at 585. The officer parked his car behind the defendant's car in the driveway, but, before he could exit his car, the defendant and a companion approached the officer. The officer asked Parker and his companion what was going on and whether they lived at the apartment complex. Because Parker had his hand concealed, the officer quickly exited from his patrol car and asked Parker and his companion to lift their shirts and turn around, so he could determine if they were armed. The *Parker* court held that the initial encounter was consensual because Parker approached the officer, who made no affirmative actions to establish a show of authority. 282 Kan. at 593. The *Parker* court further concluded that the encounter did not escalate into an investigatory detention when the officer asked Parker to lift his shirt because Parker voluntarily complied with the officer's request without requiring the officer to assert his authority. 282 Kan. at 593.

Like our conclusion in *Parker*, we believe the facts in this case support the conclusion that a reasonable person in Lee's circumstance would have felt free to disregard the officer's request, but Lee chose to voluntarily comply and allow the officers to conduct a pat-down search for weapons. Prior to asking for Lee's consent

to a pat-down search, one of the officers asked Lee if he had any weapons. Lee responded affirmatively, voluntarily removing two legal knives from his pocket and placing them on a nearby picnic table. One of the officers then asked for permission to conduct a pat-down search for weapons. Like Parker, who immediately raised his shirt in response to the officer's request, Lee consented to the pat-down search without hesitating or requiring the officer to assert his authority. Accordingly, we conclude that the encounter did not become an investigatory detention simply because the officer asked Lee for permission to conduct a pat-down search for weapons.

We disagree with the district court's conclusion that the officers' presence was coercive merely because the officers were wearing uniforms and carrying standard-issue weapons. In *Reason*, this court decided that the defendant had voluntarily consented to the search of his vehicle even though the initial voluntary encounter had become an investigatory detention when the officer checked for outstanding warrants. *Reason*, 263 Kan. at 415-16. Noting that there were two officers present, the *Reason* court stated that the officer did not use forceful language, did not brandish a weapon, and did not otherwise attempt to coerce Reason into consenting to the search. 263 Kan. at 415-16. Likewise, there is no evidence in the record before us to establish that the officers used forceful language, brandished any of their weapons, or otherwise attempted to coerce Lee into consenting to the pat-down search.

We agree with the conclusion reached by the majority of the panel for the Court of Appeals. Lee voluntarily consented to the pat-down search. However, unlike the majority of the Court of Appeals, we do not believe that the analysis ends at that point. Judge Greene, the dissenting judge on the Court of Appeals, stated that "even if there was a legal justification for the pat-down, the search itself exceeded permissible bounds for such a search. In conducting a pat-down search, items may not be removed from pockets of the suspect unless the officer has reasonable or probable cause to believe the object is associated with criminal activity." Slip op. at 14-15. We agree with the dissenting judge's analysis regarding the permissible bounds of the search.

This court adopted the plain feel exception to the requirement for a search warrant in *State v. Wonders*, 263 Kan. 582, 592, 952 P.2d 1351 (1998). The requirements for the plain feel exception are: " '(1) [T]he initial intrusion which afforded authorities the plain view is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating character of the article is immediately apparent to searching authorities.' " *Wonders*, 263 Kan. at 592, 598 (quoting *State v. Galloway*, 232 Kan. 87, Syl. ¶ 2, 652 P.2d 673 [1982]). "Immediately apparent to searching authorities" has been interpreted to mean that the officer must have probable cause to believe that the object is evidence of a crime. *Wonders*, 263 Kan. at 597-98.

In this case, the initial intrusion was the pat-down search for weapons. The pat-down search for weapons was lawful because Lee voluntarily consented to the search. However, we note that Lee did not consent to a general search. The officer specifically asked for permission to conduct a pat-down search for weapons and did not ask Lee to empty his pockets. Based on this evidence, the first requirement for the application of the plain feel exception has been met—the initial intrusion was lawful.

Likewise, the second requirement for the application of the plain feel exception was met. The discovery of the methamphetamine was inadvertent because the officer did not have any reason to believe that Lee would have methamphetamine in his pocket. The officers did not question Lee about drugs, and Lee did not behave as though he were under the influence of drugs.

Under the third requirement for the plain feel exception, the officer must have probable cause to believe that the object is evidence of a crime. However, the officer testified that he did not know what the object was when he felt it. The district court found that the officer could not reasonably have believed that the small, rolled-up plastic bag was a weapon. The State does not contest this finding, and it is supported by the evidence. The officer testified that weapons typically feel hard, and the small object in Lee's pocket just felt like a bulge. Because the officer did not have probable cause to believe that the small object in Lee's coin pocket was

a weapon or evidence of a crime, the plain feel exception does not apply.

Lee consented to a pat-down search for weapons. However, the officer exceeded the scope of the search when he removed the plastic baggie containing methamphetamine from Lee's coin pocket. Because the plain feel exception does not apply, the methamphetamine in Lee's pocket was illegally seized in violation of Lee's Fourth Amendment rights. Likewise, the discovery of the marijuana residue in Lee's duffel bag was also illegal because it was a fruit of the illegal search of Lee's pocket. See *State v. Morris*, 276 Kan. 11, 25-26, 72 P.3d 570 (2003) (suppressing evidence that was discovered after the defendant was illegally seized).

Although we disagree with the district court's analysis, we affirm the district court's decision to suppress the evidence and reverse the majority decision by the Court of Appeals.

JOHNSON, J., not participating.

LOCKETT, J., Retired, assigned.

BEIER, J., concurring: Consistent with my expressed reservation in *State v. Parker*, 282 Kan. 584, 598, 147 P.3d 115 (2006) (Beier, J., concurring), I respectfully concur in the result of the majority. I depart only from that portion of the majority's analysis concerning whether the encounter between defendant and the police officers became a detention and whether there was sufficient justification for the pat-down search.