(194 P.3d 46)
No. 99,217

STATE OF KANSAS, *Appellee*, v. STEPHEN JAMES MCGINNIS, *Appellant*.

Opinion filed October 24, 2008.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Stephen N. Six*, attorney general, for appellee.

Before MALONE, P.J., ELLIOTT and MARQUARDT, JJ.

MALONE, J.: Stephen James McGinnis appeals his convictions of felony driving under the influence of alcohol (DUI) and transporting an open container. McGinnis claims the district court erred in denying his motion to suppress the evidence. Specifically, McGinnis argues that the arresting officer stopped and detained McGinnis without reasonable suspicion of criminal activity, thereby making the stop illegal. But because the initial contact between McGinnis and the arresting officer constituted a voluntary encounter, we conclude that the district court did not err in denying McGinnis' motion to suppress the evidence.

On March 20, 2007, at 10 a.m., Atchison County Deputy Sheriff Bryan Clark responded to reports of a possible stolen vehicle partially submerged in the Missouri River, near the mouth of the Independence Creek. While en route to that location, Clark observed a vehicle traveling north on a county road. The vehicle turned into a driveway that provides access to the Independence Creek and is used for parking for people fishing at the creek. Clark observed the vehicle pull over and stop along the driveway. Although the driveway dead-ends at the creek, there is sufficient room for vehicles to back out or turn around in the grass in order to return to the main road.

Clark followed the vehicle into the driveway because it had a Missouri license plate, like the vehicle reported stolen. Upon entering the driveway, Clark did not activate his emergency lights and

he parked two or three car lengths behind the other vehicle. By the time Clark exited his patrol car, the driver of the other vehicle, later identified as McGinnis, was standing at the bank of the creek and looking in the direction of the stolen car. Clark walked past McGinnis' vehicle and saw a 12-pack of beer in the front seat. Clark approached McGinnis and said hello and asked him what he was doing. McGinnis said he was looking for a fishing spot. Clark ask McGinnis if he knew anything about the car submerged in the creek, and McGinnis said no.

During the brief conversation, Clark immediately smelled the odor of alcohol on McGinnis' breath and observed that McGinnis had bloodshot eyes. Also, McGinnis' speech was slurred at times. Clark asked McGinnis if he had been drinking, and McGinnis admitted that he had consumed two or three drinks. Clark then asked McGinnis to perform various field sobriety tests. McGinnis consented and failed. As a result, Clark arrested McGinnis for DUI. Upon searching McGinnis' vehicle, Clark discovered an open container of beer. After the arrest, McGinnis was taken to the Atchison Hospital for a blood test, which later revealed a blood alcohol concentration of .12.

The State charged McGinnis with felony DUI and transporting an open container. Prior to trial, McGinnis filed a motion to suppress the evidence, arguing that he had been unlawfully stopped and detained without reasonable suspicion of criminal activity. Clark was the only witness who testified at the hearing on the motion to suppress. The district court denied the motion, characterizing the situation between Clark and McGinnis as a voluntary encounter which did not trigger Fourth Amendment protections. After a trial on stipulated facts, the district court found McGinnis guilty as charged. McGinnis timely appeals.

McGinnis claims the district court erred in denying his motion to suppress the evidence. Specifically, McGinnis argues that he was stopped and detained by Clark without reasonable suspicion of criminal activity, thereby making the stop illegal. The State does not argue that Clark possessed reasonable suspicion of criminal activity when he initially approached McGinnis. However, the State argues that the initial contact between Clark and McGinnis

was a voluntary encounter. The State asserts that McGinnis was not seized until Clark began the DUI investigation, at which time Clark possessed reasonable suspicion that McGinnis had committed this crime.

In reviewing a district court's decision regarding suppression of evidence, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. An appellate court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). McGinnis does not dispute the district court's findings of fact. When the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of Kansas Constitution Bill of Rights contains similar language and "provides protection identical to that provided under the Fourth Amendment to the United States Constitution." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

There are four types of police-citizen encounters. The first type is a voluntary encounter, which is not considered a seizure under the Fourth Amendment. *State v. Lee*, 283 Kan. 771, 774, 156 P.3d 1284 (2007). The second type is an investigatory detention or *Terry* stop, in which an officer may detain any person in a public place if the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The third type of encounter is a public safety stop, in which an officer may approach a person to check on his or her welfare when the officer can articulate specific facts indicating a concern for the public's safety. See *State v. Vistuba*, 251 Kan. 821, 824, 840

P.2d 511 (1992). The fourth type of encounter between law enforcement officers and citizens is an arrest. See K.S.A. 22-2401.

The delineation between a voluntary encounter and an investigatory detention is narrow and depends on the totality of the circumstances. Both instances involve contact between a law enforcement officer and a citizen, usually precipitated by the law enforcement officer. However, in a voluntary encounter, the citizen is always free to leave or terminate the encounter. *State v. McKeown*, 249 Kan. 506, 509, 819 P.2d 644 (1991). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). An encounter between a citizen and a law enforcement officer in a public place is considered voluntary as long as a reasonable person would feel free to decline the officer's requests for information or otherwise terminate the encounter. A voluntary encounter is not considered a seizure and does not require the officer to have reasonable suspicion of criminal activity. *State v. Young*, 37 Kan. App. 2d 700, 704, 157 P.3d 644 (2007). Conversely, a person is seized when there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority. *Morris*, 276 Kan. at 18-19. A seizure requires the officer to have reasonable suspicion of criminal activity. *Young*, 37 Kan. App. 2d at 704.

Although there is no bright-line test for distinguishing a seizure from a voluntary encounter, the Kansas Supreme Court has identified certain factors which support a seizure, including "activation of sirens or flashers, a command to halt, a display of weapons, or [an] attempt to control the ability to flee or the direction of travel during the chase." *Morris*, 276 Kan. at 20. Other factors supporting a seizure include the presence of more than one officer, the display of a weapon, physical contact by the officer, or use of a commanding tone of voice. *Lee*, 283 Kan. at 775. Once a voluntary encounter loses its consensual nature and becomes an investigatory detention,

the law enforcement officer must have "knowledge of facts giving rise to a reasonable and articulable suspicion that the defendant had committed, was committing, or was about to commit a crime." *Morris*, 276 Kan. at 17.

McGinnis argues that he was seized by Clark from the outset of their encounter, thereby triggering his Fourth Amendment protections. McGinnis premises this argument upon the fact that Clark pulled in behind his car, which was parked in the dead-end driveway, and began questioning him at close distance regarding a reported crime. McGinnis contends that no reasonable person would have felt free to leave or terminate the encounter and, therefore, the encounter from its inception constituted a seizure. According to McGinnis, Clark did not have reasonable suspicion of criminal activity at the time he initially approached McGinnis, thereby making the stop illegal.

Three recent Kansas appellate court decisions provide guidance in distinguishing a voluntary encounter from a seizure. In *State v. Gross*, 39 Kan. App. 2d 788, 184 P.3d 978 (2008), two police officers in a patrol vehicle approached a parked car occupied by the defendant as a passenger. The officers activated their emergency lights and parked their patrol vehicle parallel to the parked car in a manner that restricted the parked car from leaving. One of the officers approached the defendant and ordered her to roll down her window or open her door so that the officer could speak with her. During the encounter, the officer smelled the odor of burnt marijuana. The officers searched the parked car and subsequently arrested the defendant for possession of cocaine. The district court refused to suppress the evidence.

On appeal, the State argued that the initial encounter between the officers and the defendant was voluntary. The Court of Appeals rejected this argument and determined that the encounter from its inception was an investigatory detention. The court noted that the defendant's movement was restricted or curtailed by the manner in which the officers blocked the parked car with their patrol vehicle. The court further noted that the officers activated their emergency lights and one of the officers ordered the defendant to speak with him. The court concluded that under the totality of the

circumstances, no reasonable person in the defendant's position would have felt free to disregard the officers and terminate the encounter. 39 Kan. App. 2d at 800-01.

In *Lee*, 283 Kan. 771, two police officers were dispatched to a public park in response to a report of a suspicious man walking through the park, looking on the ground, and hitting the ground with a stick. The officers approached the man, who was later identified as the defendant, requested his identification, and asked what he was doing. The defendant explained he was looking for his wallet that he had lost the previous week. Although the defendant's behavior was not threatening, one of the officers asked if he had any weapons. The defendant removed two knives from his pocket. The officer then asked for permission to conduct a pat-down search for weapons, and the defendant complied. The officer discovered a bulge in the defendant's pocket and, without asking for consent, the officer reached into the pocket and removed a rolled-up baggie that contained methamphetamine.

On appeal, the Kansas Supreme Court determined that the police officers' contact with the defendant was a voluntary encounter. The court determined that a reasonable person in the defendant's situation would have felt free to disregard the officers and go about his or her business. The court noted that even though there were two officers, there was no evidence the officers displayed their weapons, physically restrained the defendant, or spoke with a commanding tone of voice. The court found the defendant's consent to the pat-down search was voluntary under the circumstances. In doing so, the court specifically rejected the district court's conclusion that the officers' presence was coercive merely because the officers were wearing uniforms and carrying standard-issue weapons. However, the court ultimately suppressed the evidence seized from the defendant because the court concluded the officer had violated the plain feel exception to the requirement for a search warrant when he removed the baggie from the defendant's pocket while searching only for weapons. 283 Kan. at 780.

In *Young*, 37 Kan. App. 2d 700, a police officer exited his patrol vehicle without using emergency lights and approached the defendant, who was walking through a city park. The officer did not

block the defendant's path or command the defendant to stop or speak. After approaching the defendant, the officer did not use a commanding tone of voice, physically restrain the defendant, or attempt to prohibit the defendant's ability to flee. The officer did not inform the defendant that he was free to leave or that he was not required to answer questions. However, the defendant agreed to speak with the officer, and he ultimately consented to a search which led to the discovery of methamphetamine and drug paraphernalia. The district court refused to suppress the evidence and found that the defendant had voluntarily consented to the search during a voluntary encounter with the officer.

On appeal, the Court of Appeals affirmed. The court likened the situation to the facts in *Lee*, finding the encounter to be voluntary because there was a single officer; the officer did not activate emergency lights before exiting his vehicle or command the defendant to stop or speak; and the officer did not use a commanding tone of voice, physically restrain the defendant, or attempt to control his ability to flee. The court concluded that under the totality of the circumstances, a reasonable person in the defendant's position would have felt free to decline the officer's request for information or otherwise terminate the encounter. 37 Kan. App. 2d at 715.

Returning to our facts, the initial encounter between Clark and McGinnis more closely resembled the voluntary encounters described in *Lee* and *Young* than the investigatory detention described in *Gross*. Here, Clark was the only law enforcement officer involved in the encounter. Significantly, he parked his patrol vehicle two or three car lengths behind McGinnis' car, and the evidence was undisputed that McGinnis' car was not blocked from leaving the driveway. Clark did not activate his emergency lights when he exited his patrol vehicle. Clark approached McGinnis on foot and did not brandish any weapons. The evidence established that Clark spoke in a normal voice and he did not command McGinnis to stop or to answer any questions. Clark did nothing to convey to McGinnis that he was being detained against his will. Viewed objectively, McGinnis was free to leave, and he could have declined to answer Clark's initial questions. Under the totality of

the circumstances, the initial encounter between Clark and McGinnis was voluntary.

Although the initial encounter between Clark and McGinnis was voluntary, the encounter quickly escalated to an investigatory detention. Clark immediately smelled the odor of alcohol on McGinnis' breath and he observed McGinnis' bloodshot eyes. Also, McGinnis' speech was slurred. Clark asked McGinnis if he had been drinking, and McGinnis admitted that he had consumed two or three drinks. Clark had observed a 12-pack of beer in McGinnis' front car seat. Finally, Clark had observed McGinnis driving on a county road immediately before their encounter.

Clark then commenced a DUI investigation and asked McGinnis to perform field sobriety tests. There is no doubt that when Clark asked McGinnis to perform field sobriety tests, McGinnis was no longer free to leave. By that time, however, it is clear that Clark had gained a reasonable suspicion that McGinnis had committed a DUI. Therefore, Clark's further detention of McGinnis for the DUI investigation was lawful.

In summary, the initial encounter between Clark and McGinnis was voluntary when viewed objectively under the totality of the circumstances. Based on Clark's immediate observations, he possessed reasonable suspicion to detain McGinnis for further investigation of a possible DUI. McGinnis was not unlawfully stopped or detained, and the district court did not err in denying his motion to suppress the evidence.

Affirmed.