NOT DESIGNATED FOR PUBLICATION

No. 114,772

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMIE NEIL DURHAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed February 3, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Carissa E. Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

*Per Curiam*:  Jamie Neil Durham appeals his conviction of one count of possession of marijuana after a prior conviction and one count of possession of drug paraphernalia following a bench trial on stipulated facts. Specifically, he contends the district court erred by denying his pretrial motion to suppress the evidence seized by officers. Because we find the district court's ruling to be correct, we affirm.

1

In January 2015, while patrolling a stretch of I-35 in Lyon County, Kansas, Highway Patrol (KHP) Trooper J.D. Phillips observed a pickup truck cross from the northbound lanes of the highway, through the center median, and on to the southbound lanes. Phillips proceeded to stop the truck, which was occupied by the driver and Durham as a passenger. Phillips approached the truck on the passenger side and observed a crossbow, a long/recurve bow, several tipped arrows, and at least one knife in the passenger area of the truck. The archery weapons were scattered about the rear cabin area on top of other items and were within reach of both Durham and the driver. As a KHP officer for 6 1/2 years, Phillips testified that he was trained to identify such weapons as potential threats and to take appropriate precautions for officer safety.

Phillips further observed Durham moving around in his seat, digging nervously in the center console and the glove compartment, and "nervously stirring." Phillips felt immediate concern as a law enforcement officer after he approached the passenger side of the truck, and he found Durham's actions very concerning. "I couldn't see his hands [when he was digging in the center console]," Phillips testified, and so he instructed Durham to "quit digging around"; Durham complied.

Because of the weapons in the cab, Phillips instructed the driver to get out of the truck and then conducted a pat-down of the driver for weapons. The driver did not have a driver's license, only a Kansas identification card; his license had been suspended since 2012. The driver sat in the patrol car while Phillips radioed dispatch for information on the driver's identification, called for back-up, aimed his spotlight on the truck, and moved his patrol car in reverse to create a longer "reactionary gap" from the truck, allowing for additional safety.

Once the second unit arrived, and while awaiting information about the driver's identification check, Phillips instructed Officer Schumann to stay with the driver, and Phillips returned to the truck to have Durham exit it. Durham had been alone in the truck for approximately 5 minutes. Phillips intended to put Durham in Officer Schumann's patrol car for the duration of the stop in order to separate Durham from the weapons in the truck.

As Durham exited the truck, Phillips found Durham's behavior suspicious because Durham was on his phone and moving lethargically which was "a clue [i]f somebody's going to fight or flight when they start acting in that manner." Phillips testified that Durham's actions upon exiting the truck were different than his actions when Phillips first approached the truck:

> "The first time, [Durham] was nervously digging around before I'd asked him to do anything. . . . He was on an agenda. His actions were intentional and he was moving very quickly. . . . The second approach, when I asked him to get out of the vehicle, he was very—almost passive . . . , very slow."

Phillips told Durham that he needed to check him for weapons before sending him to sit in Officer Schumann's car. Phillips instructed Durham to place his hands on the truck, but Durham did not comply; instead, Durham immediately placed his left hand inside of his left coat pocket. Phillips grabbed Durham's left elbow, raised the left arm to the truck, and told him to leave both hands on the truck, stating, "Once I check you for weapons, you can do anything you want." Phillips then began to check Durham for weapons.

Durham was wearing shorts, a shirt, and a camouflage coat with pockets. Trooper Phillips observed that the right outer pocket of the coat was hanging lower, as if it was weighted. Phillips began his weapons check of Durham with the right coat pocket since

there was something in it, Phillips believed, heavy enough to use as a weapon. Phillips retrieved the item from the right coat pocket and discovered it was a metal archery arm guard. After determining what it was, Phillips saw no reason to remove it from Durham. Phillips then moved to patting the outside of Durham's shorts pockets but felt only small items that he did not consider a threat.

When Phillips attempted to check the left side of Durham's coat for weapons, Durham again removed his hands from the truck at least two times, "as [if] he was trying to watch." Durham kept reaching into the coat pocket quickly and digging in his pockets. Phillips patted down the outside of the left coat pocket and felt two items that were approximately 3 inches long, positioned towards the bottom of the pocket. Through the thicker material, Phillips could not tell what the items were. He suspected that these 3-inch items were potential weapons, such as a folded knife, so he reached into the pocket to remove and identify the items. The item he suspected was a folded knife at the bottom of the pocket turned out to be a lighter.

To locate the item later identified as a lighter, Phillips had to remove two other items on top of it from within the left pocket: a package of Zig Zag wrapping papers and a glove with a "wad" inside it, emanating a strong odor of marijuana. Phillips smelled the odor when he opened the pocket to retrieve the suspected folded knife. After completing the weapons check of Durham, Phillips removed the wad from inside the glove and discovered a large clear plastic bag with a green, leafy vegetation inside of it. Phillips placed Durham in handcuffs, telling him, "You're not under arrest until I tell what's in this bag." Phillips instructed Officer Schumann to place Durham in his patrol car. The green, leafy vegetation field-tested positive for marijuana. This positive test was subsequently confirmed by the Kansas Bureau of Investigation.

After having Durham secured in Officer Schumann's patrol car, Trooper Phillips returned to his patrol car and received information from dispatch regarding the driver's

4

suspended license, learning that there was an active warrant for the driver. Phillips conducted an inventory search of the truck, which was then towed to impound. Inventory of the truck included the observed archery equipment, consisting of at least two bows and several tipped arrows, plus multiple knives and shotgun shells. Both the driver and Durham were transported to Lyon County Jail for booking.

The State charged Durham with one count of possession of marijuana after a prior conviction and one count of possession of drug paraphernalia. Durham filed a motion to suppress the marijuana and paraphernalia evidence, which the district court denied after a hearing.

After a bench trial on stipulated facts, the district court found Durham guilty of both charges. At sentencing, the court imposed a 20-month jail sentence for possession of marijuana with a prior conviction and a 12-month prison sentence for possession of drug paraphernalia and ordered the sentences to run concurrently. The district court then suspended the sentences and granted Durham 12 months' probation. Durham filed this direct appeal.

ANALYSIS

Durham claims that the district court committed reversible error by denying his motion to suppress. He argues that the facts presented do not give rise to reasonable suspicion to perform a *Terry* stop. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 889 (1968). Further, Durham contends Trooper Phillips exceeded the scope of both a lawful *Terry* stop and a *Terry* pat-down. Durham urges this court to reverse the district court's ruling on his motion to suppress and remand the case for a new trial.

*Standard of review*

When reviewing an evidence suppression issue, this court employs a bifurcated standard of review. First, without reweighing the evidence, this court considers whether the district court's findings are supported by substantial competent evidence. This court then reviews the district court's conclusions de novo. If the material facts are undisputed, the issue becomes a question of law subject to unlimited review. *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013).

*Searches and seizures*

Durham does not dispute that probable cause existed to stop the truck. Although in his motion to suppress presented to the district court Durham argued that the pat-down search conducted by Trooper Phillips was outside the scope of the traffic stop, his brief on appeal does not advance this argument. We will therefore consider that contention as abandoned. On appeal, Durham argues instead that Phillips' concern for his safety should have been satisfied by removing the driver and Durham from the truck. In other words, Durham argues that Phillips did not have reasonable suspicion to pat him down for weapons. Durham further claims that the foray into his pockets was an illegal search, and so the district court should have granted his motion to suppress the evidence discovered in his left jacket pocket.

A traffic stop is a seizure. *State v. Garza*, 295 Kan. 326, 332, 286 P.3d 554 (2012). For a seizure to be constitutionally reasonable, the law enforcement officer "must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). In this case, Durham does not dispute the underlying traffic infraction that triggered the traffic stop. Rather, Durham claims that

6

Phillips exceeded the scope of the stop by patting him down for weapons, and he disputes the trooper's reasonableness in conducting a search of the coat pockets.

*The pat-down*

Relying on *State v. Epperson*, 237 Kan. 707, 715, 703 P.2d 761 (1985), for the principle that "any weapons inside the car are beyond reach," Durham argues that once the officers had removed the men from the truck, the pat-downs were unnecessary because Trooper Phillips' concern for his safety should have been satisfied at that point. In support of this argument, Durham claims that, although the weapons were within reach, Durham did not actually reach for them once the truck pulled over. He also suggests that because Phillips did not see Durham move about the cabin of the truck while Phillips was in his patrol car with the driver, Durham must not have reached for a weapon while he was alone. These arguments lack merit.

The facts of this case are distinguishable from those in *Epperson* in several ways. In this case, the truck was observed violating traffic laws; there were weapons in the cab and within reach of the men; Durham nervously dug around and stirred about the cabin in ways that prevented Phillips for seeing his hands; Phillips called for back-up; Phillips aimed the spotlight on the truck and moved his patrol car to provide a safer reactionary gap from the truck; Phillips was concerned for his safety; and Phillips began the encounter by having the men exit the truck one at a time to undergo pat-down searches for weapons. *Cf. Epperson*, 237 Kan. at 714-15. Further, the timeline of events demonstrates that, in addition to Durham's actions that caused Phillips' initial concern, Durham was alone in the truck with the weapons for several minutes while Phillips was engaged with the driver. Then, when Phillips returned to Durham in the truck, Durham's actions and affect were again of concern to Phillips, in and of themselves, but also compared with his demeanor several minutes earlier.

Under *Terry*, a police officer may conduct a reasonable search for weapons when that officer has an articulable suspicion that a person is armed and dangerous. "Reasonability" is determined by whether a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27. In Kansas, these principles are codified at K.S.A. 22-2402, specifying that when a law enforcement officer stops an individual, if that officer "reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons."

In this case, Trooper Phillips was alone when he approached the truck and observed numerous items of weaponry in the cab of the truck, as well as Durham's initial furtive behavior, which prevented Phillips from seeing his hands. Because of the weapons in the cab, Phillips removed the driver and patted him down before directing him into the patrol car. For several minutes, Durham was alone with the weapons while Phillips acted on concerns for his safety (aiming his spotlight at the truck; backing up to create a larger reactionary gap; calling for back-up), concentrated on the driver, and waited for the second unit to arrive.

To justify a pat-down during a traffic stop, an officer need not be absolutely certain that an individual is armed but must harbor reasonable suspicion that the person is armed and dangerous. *State v. White*, 44 Kan. App. 2d 960, 970, 241 P.3d 591 (2010) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 [2009]). Under the facts of this case, conducting protective pat-downs was reasonable for Phillips' own safety, as well as for the safety of Officer Schumann. See *State v. Spagnola*, 295 Kan. 1098, 1104-05, 289 P.3d 68 (2012) (officer's observations sufficient to permit pat-down search); *White*, 44 Kan. App. 2d at 972 ("Courts will uphold a pat-down for officer safety as long as the officer articulates any reasonable suspicion that the officer's personal safety requires it."). Phillips' observations of the weapons in the vehicle, Durham's initial furtive actions, and Durham's changing affect from the first encounter to

the second after he had been alone with the weapons, demonstrate that Phillips did not base his decision to pat-down Durham on a hunch or inchoate discomfort. Phillips did not exceed the scope of the *Terry* stop.

*The search of Durham's pockets*

Durham argues that Trooper Phillips' search of his coat pockets was not reasonable because Phillips could not identify the items in Durham's pocket and because Phillips "immediately went *into* Mr. Durham's pocket and removed not just the suspect item, but all of the contents of Mr. Durham's pocket." Durham contends that since it was not immediately apparent what the items in the pocket were, the plain-feel exception cannot apply. The record reflects otherwise.

A pat-down maneuver allows an officer to pat-down a person's outer clothing without placing the officer's hands inside any pockets unless or until a weapon is found. *State v. Golston*, 41 Kan. App. 2d 444, 455, 203 P.3d 10 (2009). Removing items from the pockets of a suspect exceeds the permissible bounds of a *Terry* pat-down unless the officer has probable cause to believe an object is a weapon or associated with criminal activity. *State v. Lee*, 283 Kan. 771, 779-80, 156 P.3d 1284 (2007). The requirements for the plain-feel exception are: (1) the initial intrusion which afforded authorities the plain feel is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating character of the article is immediately apparent to searching authorities. *State v. Wonders*, 263 Kan. 582, 597, 952 P.2d 1351 (1998).

As we observed above, the reason for the pat-down was lawful, and thus the first requirement is met. The second requirement is met because the discovery of the marijuana was inadvertent; Trooper Phillips had reason to believe Durham had a weapon on his person, but there is nothing in the record to suggest Phillips suspected drugs. Further, it was only in pursuit of what Phillips thought was a folded knife that he

9

discovered the marijuana. It is upon the last requirement of "immediately apparent incriminating character" that Durham's argument hinges.

"Immediately apparent to searching authorities" has been interpreted to mean that the officer must have probable cause to believe that the object is evidence of a crime or is a weapon. *Lee*, 283 Kan. at 779-80; *Wonders*, 263 Kan. at 597-98. This interpretation does not, however, require that an officer's degree of suspicion approach "certainty." See *Wonders*, 263 Kan. at 596-97. By the time Trooper Phillips began the pat-down of Durham, Phillips had observed multiple weapons within Durham's reach, observed Durham's furtive actions in the truck, knew that Durham had been alone in the truck with the archery weapons and at least one knife for several minutes without law enforcement oversight, witnessed a change in Durham's demeanor after being alone with the weapons, and observed the weighted right pocket. Further, both before and during the pat-down, Durham attempted to put his hand in his left coat pocket; Durham's lack of compliance warranted Phillips telling Durham multiple times—as well as physically manipulating him—to keep his hands on the truck. In this context, Phillips had probable cause to believe that the 3-inch long item at the bottom of Durham's left coat pocket was a weapon. In other words, meeting the third element of the plain-feel test, the item at the bottom of Durham's pocket was immediately apparent to Phillips to be a folded knife. The plain-feel exception applies.

Once Phillips felt the item believed to be a knife in Durham's left coat pocket, he attempted to retrieve that item. In doing so, Phillips had to open the pocket and then remove the two items that were on top of the suspected knife. Upon opening the pocket, Phillips smelled, what he suspected from his experience and training to be, marijuana.

Kansas courts give considerable weight to inferences based on an officer's training and experience. *Cf.*, *State v. Ramirez*, 278 Kan. 402, 407-08, 100 P.3d 94 (2004). Trooper Phillips removed the glove with the bulge in it and the package of Zig Zags, placing them

on the bumper of the truck. Phillips then located the item at the bottom of the pocket and discovered it was a lighter. Because of the smell of marijuana emanating from the glove, Phillips turned his attention to it and removed the bulge to discover a plastic bag containing what was later confirmed to be marijuana. "It is the majority rule within the United States that odor can 'serve as the basis, or principal basis, for probable cause for arrest.'" *State v. Darkis*, No. 90,738, 2004 WL 1373302, at *3 (Kan. App. 2004) (unpublished opinion).

Contrary to Durham's argument, the record demonstrates that during the pat-down, Trooper Phillips felt, what in the totality of the circumstances was believed to be, a folded knife. Out of concern for his own safety, as well as that of Officer Schumann, Phillips went into the pocket to retrieve the suspected knife. In the course of doing so, Phillips had to open the pocket and remove the items on top of the suspected knife. After discovering that the item was in fact a lighter, Phillips could not then overlook the strong odor of marijuana coming from the bulging glove. See *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983) (police cannot be required to ignore contraband other than weapons; Fourth Amendment does not require suppression in such cases).

The totality of the circumstances in this case support the conclusion that Trooper Phillips had a reasonable suspicion that Durham was armed. The district court's denial of Durham's motion to suppress was based on substantial competent evidence.

Affirmed.