NOT DESIGNATED FOR PUBLICATION

No. 115,799

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS GRANT MACDONALD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed August 25, 2017. Reversed and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MCANANY, J., and STEVEN R. EBBERTS, District Judge, assigned.


PER CURIAM: Nicholas Grant MacDonald appeals from the district court's denial of his motion to suppress evidence from his vehicle. The case proceeded to a bench trial on stipulated facts. However, MacDonald preserved his right to appeal the decision on the suppression motion. Based on the stipulated facts, the district court convicted him of possession of methamphetamine and possession of marijuana. On appeal, MacDonald contends that the district court erred in denying his motion to suppress. Based on our review of the record, we agree. Thus, we reverse MacDonald's convictions and remand this case to the district court with directions.

1

In the early morning hours of May 4, 2015, Officer Ryan Sumner of the Lenexa Police Department responded to a call regarding two suspicious people allegedly looking into vehicles in the parking lot of the Crossland Hotel, located near 95th Street and I-35 in Johnson County. It appears that the dispatcher did not give a physical description of the suspicious people. When he received the call from the dispatcher, Officer Sumner was sitting in his patrol car in the parking lot of a Motel 6 located next door to the Crossland Hotel. When he looked over to the Crossland Hotel, he could see one person standing outside. However, Officer Sumner did not hear any car alarms or the sound of breaking glass nor did he personally observe any evidence of criminal activity.

When he entered the Crossland Hotel parking lot, Officer Sumner noticed a man walking. When the officer approached the man, he did not detect the odor of drugs or alcohol, and the man's eyes appeared to be normal. Moreover, Officer Sumner did not see any burglary tools or stolen property near the man. Officer Sumner asked if he could speak to the man, and he agreed. The man identified himself to be MacDonald, and he gave Officer Sumner his driver's license.

MacDonald told Officer Sumner that he had not been looking in cars and agreed to allow the officer to pat him down for weapons. MacDonald admitted to having a legal pocketknife in his pocket, and the officer found no other weapons or contraband. Officer Sumner did feel a set of keys in MacDonald's pocket, but he did not remove them. Shortly after patting MacDonald down, Officer Sumner learned from the dispatcher that MacDonald did not have any outstanding warrants. Evidently, he did have a prior conviction involving marijuana.

At least three other Lenexa police officers arrived at the Crossland Hotel parking lot shortly after Officer Sumner had arrived. It is unclear from the record on appeal what

2

the other officers did because none of them testified at the preliminary hearing or at the hearing on the motion to suppress evidence. Likewise, it is difficult to hear what the other officers were saying on the video taken from Officer Sumner's body camera, and we do not know if any of them also had body cameras. According to Officer Sumner, one of the other officers may have spoken to the person who had called 911 and said MacDonald was the suspicious person the caller had reported. However, the caller—who is not identified in the record—apparently did not see MacDonald attempt to break into any of vehicles.

At some point, Officer Sumner activated his body camera as he asked MacDonald several questions regarding what he was doing in the hotel parking lot. He told the officer that he was staying with his mother and brother at the hotel but did not want to wake them up. The video from Officer Sumner's body camera was played for the district court at the suppression hearing. Likewise, we have reviewed the video, which is part of the record on appeal. Although it is difficult to determine from the video, it appears that the other officers were standing beside or closely behind Officer Sumner when he questioned MacDonald.

According to Officer Sumner, MacDonald was not free to leave after the pat down because the officers were investigating a possible burglary. As he went to look around the parking lot, Officer Sumner had MacDonald stay with the other officers. From looking around the parking lot, Officer Sumner did not see any signs that vehicles had been burglarized nor did he see any possible burglary tools. In fact, there is nothing in the record to suggest that any of the officers ever found evidence suggesting that vehicles had been or were about to be burglarized.

Officer Sumner also asked MacDonald which vehicle he drove. MacDonald said he drove a Jeep. The officer ran the tag on a tan Jeep Cherokee parked about seven spaces away from where MacDonald and the officers were standing. The dispatcher confirmed

3

that MacDonald was the registered owner of the Jeep. According to Officer Sumner, the doors to the Jeep were locked and the windows were rolled up.

Officer Sumner looked into the windows using his flashlight for illumination. Although it is difficult to see anything clearly inside the Jeep on the video from the body camera, Officer Sumner later testified that he did not see any items related to a burglary. Instead, the officer evidently saw a closed "velvet-type" bag that he believed could possibly contain drug paraphernalia. He later looked back into the windows of the Jeep and apparently saw what he believed to be a "marijuana stem" sitting in an ashtray in the cup holder.

Officer Sumner then returned to MacDonald and asked for permission to search the Jeep. MacDonald initially refused and said the officer should get a warrant. Officer Sumner then told MacDonald that "we can do this the easy way, or we can do this the hard way. Either way I'm going to get into that car." He also told MacDonald "I'm not getting a warrant." Officer Sumner told MacDonald that the "hard way" might cause damage to the Jeep.

At that point, Officer Sumner told MacDonald to turn around and put his hands behind his back—evidently placing him under arrest. However, there is nothing in the record to indicate the basis for the arrest nor did the officer read MacDonald his *Miranda* rights. Before Officer Sumner handcuffed MacDonald, he agreed to give the officer his keys. Although Officer Sumner did not put MacDonald into handcuffs, he told him to sit down and later had him sit in a patrol car while he searched the vehicle.

While searching the Jeep, Officer Sumner found a Camel's cigarette package in the driver's side door that contained methamphetamine and marijuana. In addition, the officers seized mushrooms from a safe found in the vehicle. The Johnson County Sheriff Criminalistics Laboratory subsequently confirmed that the items seized were .63 grams of

4

marijuana, .60 grams of methamphetamine, and 3.26 grams of psilocin. It does not appear from the record on appeal that the officers seized or tested the suspected marijuana stem that allegedly established probable cause for the search.

Ultimately, the State charged MacDonald with possession of methamphetamine, possession of marijuana with a prior drug conviction, possession of paraphernalia, and possession of psilocin. A few weeks after his preliminary hearing, MacDonald filed a motion to suppress the evidence seized during the search of the Jeep. At a hearing held on July 29, 2015, Officer Sumner testified regarding his training and experience. He then testified about the events that occurred in the early morning hours of May 4, 2015. MacDonald's attorney cross-examined Officer Sumner and played the video from his body camera for the district court.

In denying the motion to suppress, the district court found that there was reasonable suspicion for Officer Sumner to conduct an investigation based on the 911 call regarding suspicious people looking into cars in the Crossland Hotel's parking lot. The district court further found that MacDonald initially responded to the officer's questions voluntarily and consented to the pat down. Moreover, the district court found that MacDonald voluntarily identified his vehicle and that the subsequent search was justified in light of the "plain view" doctrine.

As part of a plea agreement, in which the State agreed to dismiss two of the charges filed against MacDonald, the parties agreed to a bench trial on stipulated facts. In the stipulation, MacDonald reserved his right to appeal the district court's denial of his motion to suppress. Among other things, the stipulation stated that, "[w]hile looking through the vehicle's window, to see if he observed any type of stolen items, [Officer] Sumner noted a big marijuana stem in the ashtray and what appeared to be a velvet case in the driver's side door panel which based on his experience he believed would contain a

5

pipe." The parties further stipulated that officers found .63 grams of marijuana and .60 grams of methamphetamine during the subsequent search of the vehicle.

At the bench trial held on January 19, 2016, the district court found MacDonald guilty of possession of methamphetamine and possession of marijuana with a prior conviction. The district court subsequently granted him a downward durational departure and sentenced him to 26 months of imprisonment for possession of methamphetamine, with 12 months of postrelease supervision. On the charge of possession of marijuana with a prior conviction, he received a concurrent 11-month sentence, with 12 months of postrelease supervision. Thereafter, MacDonald filed a notice of appeal.

ANALYSIS

The sole issue presented on appeal is whether the district court committed reversible error when it denied MacDonald's motion to suppress. In particular, MacDonald contends that the district court's denial of his motion to suppress was erroneous for four reasons. First, MacDonald argues that Officer Sumner unlawfully seized him without reasonable suspicion. Second, MacDonald argues that the officer questioned him in violation of his constitutional rights. Third, MacDonald argues that he did not consent to the search of his vehicle. Fourth, MacDonald argues that the plain view exception to the warrant requirement did not give Officer Sumner authority to search the vehicle.

*Standard of Review*

We apply a bifurcated standard when reviewing a district court's decision on a motion to suppress. We first review the factual underpinnings of the district court's ruling to determine whether there was substantial competent evidence. We then review the legal conclusions reached by the district court under a de novo standard. In reviewing the

6

factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Because this case comes before us following a ruling on a motion to suppress evidence, the State bears the burden of proving the lawfulness of its search and seizure. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

The Fourth Amendment to the United States Constitution—made applicable to the states through the Fourteenth Amendment—and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. A warrantless search is per se unreasonable unless it falls within a recognized exception. *State v. Ryce*, 303 Kan. 899, 913, 368 P.3d 342 (2016); *State v. Baker*, 306 Kan. ___, 395 P.3d 422, 427 (2017). The exclusionary rule is a judicially created remedy that prohibits the introduction of evidence obtained in an unreasonable search and seizure in order to deter future violations. See *Davis v. United States*, 564 U.S. 229, 236-38, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011); see also *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014).

*Initial Contact with MacDonald*

We turn first to the nature of Officer Sumner's initial contact with MacDonald. Encounters with law enforcement officers generally fall into four categories: (1) voluntary or consensual encounters; (2) investigatory detentions; (3) public safety stops; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). Voluntary encounters are not considered seizures and do not trigger the protections of the Fourth Amendment. Furthermore, a voluntary encounter is not transformed into a seizure simply because an individual responds to questions or provides identification when approached by an officer. *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). Investigatory stops require reasonable suspicion of criminal activity. *State v. Kermoade*, 33 Kan. App. 2d 573, 579, 105 P.3d 730 (2005).

7

An encounter between law enforcement and an individual will be deemed consensual if under the totality of the circumstances the officer's conduct conveys to a reasonable person that the person is free to terminate the encounter. See *Reiss*, 299 Kan. at 298. This analysis depends on the voluntary nature of the stop and search. As noted above, police may have voluntary contact with a person, which does not implicate the person's constitutional rights, provided the person is reasonably able to terminate the contact.

When determining whether a law enforcement-citizen encounter is voluntary, we consider a nonexclusive list of factors. This list includes the presence of more than one officer, the display of a weapon, physical contact by the officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. See *State v. Lee*, 283 Kan. 771, 775, 156 P.3d 1284 (2007); *State v. Morris*, 276 Kan. 11, 19-20, 72 P.3d 570 (2003); *State v. Gross*, 39 Kan. App. 2d 788, 798-800, 184 P.3d 978 (2008). Based on the totality of the circumstances, we conclude that the initial contact between Officer Sumner and MacDonald was voluntary.

Upon arriving in the parking lot of the Crossland Hotel, Officer Sumner got out of his marked patrol car, approached MacDonald, and asked if he could speak to him. MacDonald identified himself, gave the officer his driver's license, and willingly answered the officer's preliminary questions. In particular, Officer Sumner asked MacDonald whether he had been looking into vehicles and he responded no. Additional officers around arrived, but they evidently did not surround MacDonald or control his movement.

The video introduced at the suppression hearing supports Officer Sumner's testimony that he was courteous during his initial encounter with MacDonald. Moreover, it appears from the video that MacDonald voluntarily answered the officer's initial

8

questions and consented to a pat down for weapons. Thus, up to that point in time, we have no difficulty with the district court's conclusion that the contact between Officer Sumner and MacDonald was voluntary and find substantial competent evidence supports that conclusion.

*Continued Questioning of MacDonald*

As the district court recognized, the more difficult question is whether Officer Sumner's continued questioning of MacDonald after the initial encounter and the pat down violated his constitutional rights. Officer Sumner candidly testified that MacDonald was not free to leave after the pat down. As such, even if the initial contact was voluntary as the district court concluded, the encounter became an investigatory detention at that point.

In order for a law enforcement officer to detain a person for further investigation, the officer "must know of *specific and articulable facts* that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime. . . . [Citations omitted.]" (Emphasis added.) *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014); see *State v. Chapman*, 305 Kan. 365, 370, 381 P.3d 458 (2016). Evidently, Officer Sumner believed that the detention of MacDonald for further investigation following the pat down was justified because he was "in the middle of investigating a burglary to auto." However, similar to *State v. Chapman*, we find nothing in the record to suggest that the 911 caller, who was unknown to Officer Sumner at the time of the pat down, reported a burglary of a vehicle, nor do we find evidence in the record to suggest that a burglary had been or was about to be committed by MacDonald.

A review of the record reveals that Officer Sumner received a call from dispatch indicating that an unidentified person had reported "two suspicious people" who were "looking at vehicles at Crossland Hotel." However, we find nothing in the record to

9

indicate that either the 911 caller or the dispatcher mentioned a burglary. We also find nothing in the record to suggest that either the caller or the dispatcher gave a physical description of the two suspicious people. In fact, Officer Sumner testified that he did not even know if the suspicious people were male or female.

At the time he received the call from the dispatcher, Officer Sumner was sitting in his patrol car parked near an adjacent motel and could see the parking lot of the Crossland Hotel. Even though the dispatcher reported two suspicious people, Officer Sumner only saw one person standing in the parking lot. The person, who turned out to be MacDonald, did not run off, was not holding anything in his hands, did not pull anything out of his pockets, did not brandish a weapon, and made no intimidating gestures. Likewise, Officer Sumner did not see any signs that MacDonald was using drugs.

Shortly after Officer Sumner arrived in the Crossland Hotel parking lot, at least three other Lenexa police officers arrived. It is unclear what the other officers were doing, and they did not testify either at the preliminary hearing or at the suppression hearing. It is clear, however, that Officer Sumner took the lead in speaking with MacDonald. During the initial encounter, MacDonald gave the officer his name, provided the officer with his driver's license, and answered the officer's questions. Specifically, MacDonald stated that he was not with anyone else, he denied looking into vehicles in the parking lot, and he indicated that he was staying at the Crossland Hotel with his mother and brother in Room 132.

As indicated above, MacDonald agreed to allow Officer Sumner to pat him down to make sure he was not carrying any weapons. Officer Sumner testified that he found nothing illegal in MacDonald's possession during the pat down. MacDonald was not in possession of weapons, burglary tools, stolen property, drugs, drug paraphernalia, or any other suspicious item. About the time Officer Sumner completed the pat down, he

10

received word from the dispatcher that MacDonald had no outstanding warrants. MacDonald, however, did have a prior conviction involving drugs.

According to Officer Sumner, sometime after the pat down he started to go through the parking lot to look at vehicles. In doing so, he found no evidence that any vehicles had been broken into and he found no burglary tools in the parking lot. Likewise, none of the other officers found any evidence to suggest that a burglary had been committed or was likely to be committed. Nevertheless, Officer Sumner testified that MacDonald was not free to leave. Instead, the officer continued to ask him questions.

Once Officer Sumner had completed the pat down, determined that MacDonald had no outstanding warrants, and had looked around the parking lot, MacDonald should no longer have been detained by the police officers. At that point, Officer Sumner had nothing more than a hunch that MacDonald was involved in some type of criminal activity. As both the United States Supreme Court and the Kansas Supreme Court have held, "a hunch has never been the benchmark of a proper police seizure." *State v. Martinez*, 296 Kan. 482, 488, 293 P.3d 718 (2013) (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). Certainly, a hunch is far from the type of *specific and articulable facts* that create a reasonable suspicion that a detained person has committed or is about to commit a crime. Thus, based on Officer Sumner's testimony and our review of the body camera video, we conclude that it was improper to extend the encounter once the pat down had occurred, it had been determined that MacDonald had no outstanding warrants, and no evidence of a burglary had been found in the parking lot.

In summary, because the law enforcement officers had no specific reasonable and articulable suspicion to detain MacDonald for further investigation after the initial voluntary encounter, we find that his constitutional protection against unreasonable seizure was violated. Accordingly, we conclude that this constitutional violation tainted all of the evidence of criminal wrongdoing obtained after MacDonald's unlawful seizure.

11

See *Reiss*, 299 Kan. at 304 (citing *State v. McGinnis*, 290 Kan. 547, 551, 233 P.3d 246 [2010]). We, therefore, reverse MacDonald's convictions and remand this case to the district court with directions to grant his motion to suppress evidence.

Reversed and remanded.